**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **LUCINDA MANUEL,** | **1:14-cv-665-LJO-BAM** |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER RE DEFENDANT'S MOTION TO DISMISS (DOC. 11)** |
| v. | |
| **THE UNITED STATES OF AMERICA, et al.,** | |
| Defendants. | |

## I. INTRODUCTION

On May 5, 2014, Plaintiff Lucinda Manuel ("Plaintiff") filed this case against Defendants United States ("Defendant") and Does 1-50, inclusive. Doc. 2, Complaint ("Compl."). Plaintiff asserts one cause of action for negligence against Defendant based on injuries she sustained in a motor vehicle accident on March 16, 2012. *Id.* at 1-2. Plaintiff brings her claim against Defendant under provisions of the Federal Tort Claims Act ("the FTCA"), 28 U.S.C. §§ 1346(b), 2401(b), and 2671-80. *Id.* at 2, 6.

Currently before the Court is Defendant's motion to dismiss Plaintiff's complaint under Fed. R. Civ. P. 12(b)(1) on the ground that this Court lacks subject matter jurisdiction over the complaint. Doc. 11-1 at 1. Defendant argues Plaintiff cannot assert her claim against Defendant under the FTCA because the federal government has not waived its sovereign immunity from tort claims like Plaintiff's. *Id.*

The Court has reviewed the papers and determined that the matter is suitable for decision without oral argument pursuant to Local Rule 230(g). Doc. 22. For the reasons discussed below, the Court GRANTS Defendant's motion to dismiss.

1

## II. FACTUAL AND PROCEDURAL BACKGROUND[1]

On November, 2012, Plaintiff "was involved in a serious motor vehicle accident," ("the accident") which she alleges was caused by Ms. Frances Hammond ("Hammond"). Compl. at ¶¶ 8, 12.[2] Hammond is an employee of the Tule River Tribe ("the Tribe") and the Tule River Tribal Council ("the Tribal Council"). The accident occurred "on Reservation Road in Porterville, California . . . off of the Indian reservation and on a county road maintained by the County of Tulare, California." *Id.* at ¶ 8. Plaintiff alleges that Hammond "crossed the center line of a county road causing her vehicle to strike a vehicle occupied by [P]laintiff, thereby causing severe personal injuries" to Plaintiff. *Id.* at ¶ 12.

Plaintiff alleges that "[a]t the time of the accident . . . Hammond was employed in a community liaison position given charge with putting out the Tribal newsletter." *Id.* at ¶ 4. Plaintiff claims that

> Hammond was on the job and in the course and scope of her employment with the Tribe and/or the Tribal council at the time of the accident in that she was traveling from her office in the administration building at Tribal headquarters down the mountain to the city of Porterville in order to purchase a SIM card for her camera and then to later cover a newsworthy event in the city of Porterville that same evening for inclusion in the Tribal newspaper.

*Id.* at ¶ 8. The event Hammond intended to cover was a concert at the Tribe's casino.[3]

Hammond is "part of the central Tribal administration," and has an office at the administrative building at the Tribal headquarters. *Id.* at ¶ 5. Plaintiff alleges that "The Tribe is funded through an Annual Funding Agreement (AFA) with the Federal Government . . . which includes various general administrative expenses and reimbursement for indirect costs at approximately 12%." *Id.* at ¶ 5. "[T]he Federal Government funds numerous other programs and budgets for the Tribe, all of which are served by the newsletter and . . . Hammond's community liaison position." *Id.* Plaintiff further alleges that "tribe or tribal organization which employs . . . Hammond had entered into contracts with the Federal Government to assume the administration of programs formerly administered by the Federal

---

[1] The following facts are undisputed unless otherwise indicated.

[2] Plaintiff erroneously states once in the complaint that the accident occurred on March 16, 2012. *See* Compl. at 1.

[3] *See* Doc. 11-5 at ¶ 2. Plaintiff does not allege in the complaint that Hammond intended to cover the casino concert on the day of the accident, but does not dispute Defendant's assertion that was Hammond's intention. *See* Doc. 16 at 7.

2

Government on behalf of the tribe." Compl., Ex. A, Attachment 3,[4] at 14. "Part of the administration of said Indian self-determination contracts was the employment of community outreach and liaison personnel such as . . . Hammond." *Id.*

Plaintiff brings this suit against Defendant "in the place of the Tule River Indian Tribe, the Tule River Tribal Council, and its employee . . . Hammond, pursuant to . . . the [FTCA]." *Id.* at ¶ 3; *see also id.* at ¶ 14. Plaintiff asserts that "Hammond's position with the Tribe was funded directly and/or indirectly by the United States government . . . such that liability for [her] claim fails to the United States . . . under the [FTCA]." *Id.* at 1. Specifically, Plaintiff asserts that this action

> is a tort claim against a tribe or tribal organization . . . and its employee . . . Hammond, arising out of the tribe or tribal organization carrying out an Indian self-determination contract as defined by 25 U.S.C. Section 450b(j) and 450e-1, and as such this is to be considered a claim against the United States and covered to the full extent of the [FTCA].

Compl., Ex. A, Attachment 3, at 14 (citation omitted).

Plaintiff acknowledges that "no Indian Self-Determination Act contract in force at the time of the accident has yet been located, which specifically identifies . . . Hammond as an employee." *Id.* at 6. Plaintiff also does not dispute that Hammond's "payroll checks were coded to indicate payment from the Tribal General Fund." Doc. 16 at 6. Plaintiff argues, however, that she may assert her claim against Defendant under the FTCA "under the umbrella of the [Tribe's] nine (9) separate Indian Self-Determination Act contracts in force on the date of the accident" because Hammond "was acting as a community liaison in service of all nine (9) contracts." *Id.* at 17. In sum, Plaintiff claims that Hammond is an employee of the government for FTCA purposes pursuant to Tribe's self-determination contracts with the federal government, thereby waiving Defendant's sovereign immunity under the FTCA. *See* Doc. 16 at 17.

Defendant moves to dismiss Plaintiff's complaint on the ground this Court lacks subject matter

---

[4] "The FTCA requires a government tort plaintiff, prior to filing a district court action, to present a 'claim to the appropriate Federal agency' and the agency's claim denial." *Pineda v. Golden Valley Health Ctrs.*, No. 10-cv-847-LJO-GSA, 2010 WL 2629286, at *3 (E.D. Cal. June 28, 2010) (quoting 28 U.S.C. § 2675). Defendant does not dispute that Plaintiff satisfied this administrative prerequisite prior to filing this case. Plaintiff incorporates by reference and attaches her FTCA claim to the complaint. *See* Compl. at ¶ 5.

3

jurisdiction over the complaint under the FTCA. Doc. 11-1 at 7. Defendant acknowledges that Tribal employees, including Hammond, potentially could be employees of the government for FTCA purposes under the Tribe's self-determination contracts. *See* Doc. 11-1 at 9 ("Congress has specifically consented to suit under the FTCA for certain claims arising out of the performance of self-determination contracts.") (citing *Hinsley v. Standing Rock Child Protective Servs.*, 516 F.3d 668, 672 (8th Cir. 2008)). Defendant asserts, however, that "Hammond was not a federal employee, she was not performing work under a Tribal self-determination contract with the United States, and her tribal position was not federally funded." Doc. 11-1 at.

Defendant therefore maintains that the Tribe's Self-Determination contracts do not provide a basis for finding that Hammond was an employee of the government at the time of the accident such that Defendant has waived its sovereign immunity under the FTCA. In support, Defendant provides declarations from individuals involved with the Tribe's management and various Tribal contracts and documentation. Doc. 11-1 at 1; *see, e.g.*, Doc. 11-4, Declaration of Claude DeSoto, Jr., ("DeSoto Decl."); Doc. 11-6, Declaration of Neil Peyron ("Peyron Decl."); Doc. 11-7, Declaration of Froilan Sarmiento ("Sarmiento Decl."); Doc. 12, Declaration of Victoria May ("May Decl.") (collectively, "the Declarations"); Doc. 21-2, Declaration of Froilan Sarmiento ("Second Sarmiento Decl.").

## III. **STANDARD OF DECISION**

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action for "lack of subject-matter jurisdiction." Faced with a Rule 12(b)(1) motion, a plaintiff bears the burden of proving the existence of the court's subject matter jurisdiction. *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996). A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears. *Gen. Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 968-69 (9th Cir. 1981). A challenge to subject matter jurisdiction may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). As explained in *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1038 (9th Cir. 2004):

> In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke

federal jurisdiction.

A Rule 12(b)(1) motion can be made as a speaking motion—or factual attack—when the defendant submits evidence challenging the jurisdiction along with its motion to dismiss. *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979); *see Savage*, 343 F.3d at 1039-40 & n. 2. A proper speaking motion allows the court to consider evidence outside the complaint without converting the motion into a summary judgment motion. *See Safe Air*, 373 F.3d at 1039.

In a speaking motion, "[t]he court need not presume the truthfulness of the plaintiff's allegations." *Safe Air*, 373 F.3d at 1039. The Court "is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage*, 343 F.3d at 1039-40, n. 2.

## IV. DISCUSSION

**A.     Jurisdiction and Sovereign Immunity.**

"The United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood*, 312 U.S. 584, 586 (1941). "There cannot be a right to money damages without a waiver of sovereign immunity." *United States v. Testan*, 424 U.S. 392, 400 (1983). "[T]he United States may not be sued without its consent and . . . the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983).

A waiver of traditional sovereign immunity is not implied but must be unequivocally expressed. *See Testan*, 424 U.S. at 399. "[S]tatutes which are claimed to be waivers of sovereign immunity are to be strictly construed against such surrender." *Safeway Portland Emp. Fed.Credit Union v. Fed.Deposit Ins. Corp.*, 506 F.2d 1213, 1216 (9th Cir.1974).

A party bringing a cause of action against the federal government bears the burden of showing an

unequivocal waiver of immunity. *Holloman v. Watt*, 708 F.2d 1399, 1401 (9th Cir. 1983), *cert. denied*, 466 U.S. 958 (1984). "Thus, the United States may not be sued without its consent and the terms of such consent define the court's jurisdiction." *Baker v. United States*, 817 F.2d 560, 562 (9th Cir. 1987), *cert. denied*, 487 U.S. 1204 (1988). "The question whether the United States has waived its sovereign immunity against suits for damages is, in the first instance, a question of subject matter jurisdiction." *McCarthy*, 850 F.2d at 560. "Absent consent to sue, dismissal of the action is required." *Hutchinson v. United States*, 677 F.2d 1322, 1327 (9th Cir. 1982).

**B.     FTCA.**

Plaintiff asserts that she may bring her claim against Defendant because Defendant has waived its sovereign immunity under the FTCA. *See* Compl. at ¶ 1. Plaintiff further asserts that the federal government funded Hammond's position to such an extent that Defendant should be liable for the negligent acts Hammond committed during the course of her employment. *See id.* at 1-2.

"The FTCA is the exclusive remedy for tortious conduct by the United States, and it only allows claims against the United States." *Fed. Deposit Ins. Corp. v. Craft*, 157 F.3d 697, 706 (9th Cir. 1998). The FTCA "vests the federal district courts with exclusive jurisdiction over suits arising from the negligence of Government employees." *Jerves v. United States*, 966 F.2d 517, 518 (9th Cir.1992). "Section 1346(b) [of the FTCA] grants the federal district courts jurisdiction over a certain category of claims for which the United States has waived its sovereign immunity and 'render[ed]' itself liable." *Fed. Deposit Ins. Corp.v. Meyer*, 510 U.S. 471, 477 (1994) (citations omitted). Section 1346(b) provides in pertinent part:

> [T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be held liable to the claimant in accordance with the law of the place where the act or omission occurred.

Under the FTCA, the United States may be held liable in actions "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Accordingly, "[t]he

FTCA waives the United States' sovereign immunity for certain negligence claims, but it does so only if a private person, performing the same act as the United States, would be liable under the governing state law." *Garcia v. United States*, 709 F. Supp. 2d 1133, 1138 (D. N. M. 2010) (citing 28 U.S.C. § 2674).

Accordingly, whether Defendant is liable for Hammond's alleged negligence under the FTCA turns on whether she is an employee of the government under the FTCA. *See* Compl. at ¶¶ 3, 14. Section 2671(1) of the FTCA provides that an "employee of the government" includes, among other things, "officers or employees of any federal agency . . . and persons acting on behalf of a federal agency in an official capacity."

**C.     Self-Determination Contracts and the FTCA.**

The Indian Self-Determination and Education Assistance Act ("ISDEAA") "waive[s] federal sovereign immunity in federal district court for certain contract claims." *Demontiney v. U.S. ex. rel. Dep't of Interior, Bureau of Indian Affairs*, 255 F.3d 801, 806 (9th Cir. 2001) (citing 25 U.S.C. § 450m-1(a)). "The ISDEAA's waiver of federal sovereign immunity is limited to 'self-determination contracts' entered into by Indian tribes or tribal organizations and the government." *Id.* at 805. A "self-determination contract" is a

> contract . . . entered into . . . between a tribal organization and the appropriate Secretary[5] for the planning, conduct and administration of programs or services which are otherwise provided to Indian tribes and their members pursuant to Federal law.

25 U.S.C. § 450b(j). "Under a self-determination contract, the federal government supplies funding to a tribal organization, allowing the tribal organization to plan, conduct and administer a program or service that the federal government otherwise would have provided directly." *FGS Constructors, Inc. v. Carlow*, 64 F.3d 1230, 1234 (8th Cir. 1995) (citing 25 U.S.C. § 450f, b(j)).

Section 314 of the 1990 amendments to ISDEAA ("Section 314") provides:

> With respect to claims resulting from the performance of functions . . . under a contract . . . authorized by the [ISDEAA] . . . an Indian tribe, tribal organization or Indian contractor is deemed hereafter to be part of the Bureau of Indian Affairs in the Department of the Interior ...

---

[5] The "appropriate Secretary" is "either the Secretary of Health and Human Services or the Secretary of the Interior or both." 25 U.S.C. § 450b(i).

> while carrying out any such contract or agreement and its employees are deemed employees of the Bureau . . . while acting within the scope of their employment in carrying out the contract or agreement . . . . [A]ny civil action or proceeding involving such claims brought hereafter against any tribe, tribal organization, Indian contractor or tribal employee covered by this provision shall be deemed to be an action against the United States and will be defended by the Attorney General and be afforded the full protection and coverage of the [FTCA].

Pub.L. No. 101-512, Title III, § 314, 104 Stat.1915, 1959–60 (1990) (codified at 25 U.S.C. § 450f notes) (citations omitted). Simply stated, Section 314 "allow[s] recovery under the [FTCA] for certain claims arising out of the performance of self-determination contracts." *FGS Constructors*, 64 F.3d at 1234; *see also Demontiney*, 255 F.3d at 807 ("The language of section 314 . . . applies to tort claims brought under the [FTCA] . . . against a contractor who has a self-determination contract."); *Snyder v. Navajo Nation*, 382 F.3d 892, 897 (9th Cir. 2004) ("Congress therefore provided that the United States would subject itself to suit under the [FTCA] for torts of tribal employees hired and acting pursuant to such self-determination contracts under the ISDEAA.").

### D.     Whether this Court Has Jurisdiction Over Plaintiff's Claim.

Plaintiff bears the burden of establishing this Court's subject matter jurisdiction over her claim against Defendant. *McCombe*, 99 F.3d at 353. This Court has jurisdiction over the claim only if it arises out of Hammond's performance of a Tribal self-determination contract. *See Navajo Nation*, 382 F.3d at 897.[6] Thus, if Hammond was not acting within the scope of her employment pursuant to a Tribal self-determination contract at the time of the accident, she was not an employee of the government under the FTCA, Defendant did not waive its sovereign immunity under the FTCA, and Plaintiff's claim must be dismissed for lack of subject matter jurisdiction.

#### 1.     Standard.

Courts employ a two-part test to determine "whether the actions or omissions of a tribal employee are covered under the FTCA" pursuant to a self-determination contract. *Farmer v. United*

---

[6] Plaintiff points to no potential source of Defendant's liability under the FTCA other than the Tribe's self-determination contracts. *See* Doc. 16 at 17-18; Compl. Ex. A, Attachment 3, at 14 ("This is a tort claim . . . arising out of the tribal or tribal organization carrying out an Indian self-determination contract").

8

*States*, No. 13-cv-251-LRS, 2014 WL 5419637, at *2 (E.D. Wash. Oct. 22, 2014).[7] "The first inquiry is whether the tribal employee is a federal employee and focuses primarily on the scope of the [self-determination] contract and whether the contract authorized the acts or omissions forming the basis of the underlying claim." *Id.* (citing *Allender v. Scott*, 379 F. Supp. 2d 1206, 1211 (D.N.M. 2005)). The second part of the test "examines whether the tribal employee was acting within the scope of his [or her] employment." *Id.* (citing *Allender*, 379 F. Supp. 2d at 1211, 1218).

### 2. The parties' positions.

As noted, Plaintiff acknowledges that "no Indian Self-Determination Act contract in force at the time of the accident has yet been located, which specifically identifies . . . Hammond as an employee." Compl., Ex. A, Attachment 3, at at 6. Plaintiff's position is not entirely clear, but it appears that Plaintiff asserts that she may bring her claim "under the umbrella" of the Tribe's self-determination contracts in existence at the time of the accident for two reasons. Doc. 16 at 17. First, Plaintiff argues Hammond's position "was funded directly and/or indirectly by the United States Government under various Self Determination Act contracts between the Tribe and [the] United States Government such that liability for this claim falls to [Defendant] under the [FTCA]." Compl. at 1; *see also id.* at ¶ 14. Plaintiff claims that this funding renders Hammond an employee of the federal government under the ISDEAA. Doc. 16 at 17-18. Second, Plaintiff argues that Hammond's position as community liaison serviced the Tribe's self-determination contracts, which also renders her an employee of the federal government under the ISDEAA. Doc. 16 at 18.

Defendant argues that Hammond was not an employee of the government at the time of the accident because (1) she was not performing work under a Tribal self-determination contract and (2) her position was not federally funded. *See* Doc. 11-1 at 1. In support, Defendant offers the Declarations and their supporting documentation.

---

[7] The Court is unaware of—and the parties have not provided—any controlling Ninth Circuit precedent that addresses how this Court must assess whether Hammond is a federal government employee under the Tribe's self-determination contracts for FTCA purposes. Accordingly, the Court draws from out-of-Circuit case law to assess the issue.

9

### 3. Analysis.

#### a. Funding for Hammond's Position.

Defendant provides the Declarations to support its position that Hammond's community liaison position is not funded by the Tribe's self-determination contracts.

Mr. Claude DeSoto, Jr., is "the community development specialist grants/contracts for the [Tribe]." DeSoto Decl. at ¶ 1. In that capacity, he oversees "all aspects of grant and contract administration concerning the [Tribe]," and he "maintain[s] files for each contract and grant for the [Tribe]." *Id.* Mr. DeSoto testifies that "[n]o self-determination contract exists for the community liaison position held by [Hammond]," *id.* at ¶ 2, and that "she is in a department that is solely funded by the [Tribe]." *Id.* at ¶ 3.

Mr. Neil Peyron is "the Chairman of the [Tribal Council]." Peyron Decl. at ¶ 1. Because of his position, he is "familiar with the [Tribe's] self-determination contracts," as well as "the operations of the [Tribe], including its economic ventures . . . [and] the Tribe's employment of persons to operate on behalf of the Tribe and its general operations." *Id.* Mr. Peyton testifies that the Tribe "uses a portion of its general fund to pay the salaries of certain tribal employees." *Id.* at ¶ 3. "One of the positions funded by the Tribe's general fund is a tribal community liaison, the position held by [Hammond] at the time of the [accident]." *Id.* Mr. Peyron further testifies that "Hammond's position is funded solely by the [Tribal Council]," and "is not funded by any contracts between the [Tribe] and the [federal government]." *Id.* at ¶ 4. As a result, the Tribal newsletter "is funded by the Tribe's general fund and funds from non-self-determination contracts." *Id.* at ¶ 5.

Mr. Sarmiento is the "Chief Financial Officer of the [Tribal Council]." Sarmiento Decl. at ¶ 1. Mr. Sarmiento testifies that "Hammond's position is funded solely by the [Tribal Council]," and "is not funded by any contracts between the [Tribe] and the [federal government]." *Id.* at ¶ 5. Mr. Sarmiento further testifies that the Tribal newsletter "is not funded under any contract between the Tribe and the [federal government]," but "is funded by the Tribe's general fund and funds from non-self-determination contracts." *Id.* at ¶ 6. Mr. Sarmiento also explained that the "Tribe's General Fund does not include any

10

monies received from any self-determination contracts," but rather "come from the Tribe's economic enterprises and other non-federal sources." Second Sarmiento Decl. at ¶ 2. Thus, the "'indirect costs' from the . . . Tribe's self-determination contracts are not used to fund any portion of the duties of the Tribe's community liaison position." *Id.* at ¶ 3.

Ms. Victoria May is the "Indian Self-Determination Officer/Level 1 Awarding Official for the Central California Agency of the Bureau of Indian Affairs [("the CCA")]." May Decl. at ¶ 1. As such, she is "familiar with the contracts between the [federal government] and the [Tribe]." *Id.* Ms. May explains that the CCA "oversees the self-determination contracts with the [Tribe] for specific programs that are made at the request of the Tribe." *Id.* at ¶ 2. "The self-determination contracts, if approved, allow for federal funding of specific programs formally operated by the United States." *Id.*

The Tribe had seven self-determination contracts with the federal government at the time of the accident. *Id.* at ¶ 3.[8] According to Ms. May, Hammond's "position is not funded under any contracts between the [Tribe] and the [federal government]." *Id.* at ¶ 8.

Plaintiff provides no evidence that undermines the Declarations and their supporting evidence. Plaintiff acknowledges that none of the Tribe's self-determination contracts "identifies Ms. Hammond as an employee," Doc. 16 at 6, and that the Tribe's general fund funded Hammond's position. *Id.* at 17. Plaintiff nonetheless asserts "[i]t is suspected that, through discovery, [Plaintiff] will . . . learn that the indirect costs provided under each Indian Self-Determination Act contract were deposited into the Tribal General Fund, the very same source of Ms. Hammond's salary." *Id.* at 18. The Court has reviewed the Tribe's self-determination contracts and cannot find any indication that any of them contemplates funding for Hammond's position. The Court finds that the Declarations establish that Hammond's position was not funded by any of the Tribe's self-determination contracts.

However, the relevant inquiry for whether a Tribal employee is an employee of the government under the ISDEAA is whether that Tribal employee is carrying out a self-determination contract; the

---

[8] The self-determination contracts are attached to Ms. May's declaration. *See* Doc. 12, Exs. A-G.

11

source of the funding for that Tribal employee's position is not dispositive. *See Navajo Nation*, 382 F.3d at 897 (tribal employees "acting pursuant to . . . self-determination contracts under the ISDEAA" are federal government employees); *Shirk v. U.S. ex rel. Dep't of Interior*, No. CV-09-1786-PHX-NVW, 2010 WL 3419757, at *5 (D. Ariz. Aug. 27, 2010) ("tribal employees are deemed federal employees for purposes of the FTCA to the extent they act within the scope of their employment, as defined by an ISDEAA contract"), *appeal docketed*, No. 10-17443, *Shirk v. United States* (9th Cir. Oct. 26, 2010). Thus, the funding for a tribal employee's position may be irrelevant for assessing whether that employee was carrying out a tribal self-determination contract. *See Adams v. Tunmore*, No. CV-05-270-FVS, 2006 WL 2591272, at *3 (E.D. Wash. Sept. 8, 2006).[9] This is so because a tribal employee may carry out a self-determination contract even if he/she is not funded by that contract. *See Big Crow v. Rattling Leaf*, 296 F. Supp. 2d 1067, 1070 (D.S.D. Jan. 2, 2004) (tribal employee paid by one of tribe's self-determination contracts found to be employee of the government for ISDEAA/FTCA purposes under second self-determination contract for carrying out functions of that contract).

### b. Nature of Hammond's Position.

Plaintiff asserts that, regardless of the source of the funding for Hammond's position, Hammond performed worked covered by the Tribe's self-determination contracts. *See* Doc. 16 at 7, ¶ 2.[10] Plaintiff argues that the nature of Hammond's position renders her an employee of the government under the Tribe's self-determination contracts. The thrust of Plaintiff's argument is that Hammond services the Tribe's self-determination contracts by virtue of her community liaison position, which "inform[s] the Tribe as to the activities of the Tribe in performing" its self-determination contracts and "serve[s] the

---

[9] *Adams* did not involve the ISDEAA, but involved "Public Law 101-512, which imposes liability upon the United States [under the FTCA] for the acts of tribal organizations and their employees administering a [Tribal Controlled School Act of 1988 ("TCSA")] Grant." 2006 WL 2591272, at *2. However, its analysis and conclusions are applicable here because the dispositive issue in the case was whether the defendant was an employee of the government under Public Law No. 101-512, Title II, § 314, whose operative provisions are identical to those of Section 314. *See id.* at *2-3 ("Under Public Law 101-512, employees of a school operated under a TCSA Grant are considered employees of the BIA and can be sued under the FTCA. Therefore, if, at the time of the incident, [the defendant] was an employee of the [tribal school] performing functions under the TCSA Grant, [the defendant] is considered a federal employee for purposes of the FTCA.").

[10] Plaintiff appears to argue in the alternative that the Tribe's self-determination contracts directly and indirectly funded Hammond's position. *See* Compl. at ¶ 14; Doc. 16 at 7, ¶ 2.

12

general needs of Tribal members under the various" self-determination contracts. Doc. 16 at 12-13. Plaintiff lists numerous duties Hammond performs in her position as community liaison that, according to Plaintiff, shows that Hammond supports the Tribe's programs that are funded by self-determination contract funds. *See id.* at 12-13.

Simply put, Plaintiff asserts that Hammond is an employee of the government under the ISDEAA because she "was acting as a community liaison in service of" the Tribe's self-determination contracts. *Id.* at 17; *see also id.* at 18 ("[T]he tribe has elected to provide [Hammond's] function in furtherance of all of its activities which specifically includes the activities under the [Tribe's self-determination contracts]"); Compl. at ¶ 5. In support, Plaintiff points to Hammond's deposition,[11] which she claims "connects [Hammond's] activities to the functions of the [Tribe's self-determination contracts]." Doc.16 at 19.

The only somewhat specific reason Plaintiff provides as to why Hammond's position falls under the Tribe's self-determination contracts is that all of the Tribe's programs and budgets, including those funded by the Tribe's self-determination contracts, "are served by the [Tribal] newsletter." Compl. at ¶ 5. Hammond writes about various Tribal programs and activities in the newsletter and, in doing so, she attends Tribal meetings and events and speaks with Tribal members. Doc. 16 at 9. Plaintiff contends that Hammond, via the newsletter, "perform[s] an essential function to inform" the Tribe's performance of its self-determination contracts. *Id.* at 12.

Although Plaintiff's argument is not entirely clear, the Court construes Plaintiff to essentially argue that Hammond's newsletter constitutes Hammond carrying out the Tribe's self-determination contracts under Section 314 because the newsletter assists the Tribe's members in carrying out the self-determination contracts themselves. Plaintiff does not provide—and the Court cannot find—any

---

[11] Plaintiff requests that the Court take judicial notice of Hammond's deposition. Doc. 16-2. Defendant argues that Hammond's deposition is not admissible because deposition testimony is not judicially noticed. Doc. 21 at 10-11. Regardless of its being styled as a request for judicial notice, the Court may consider Hammond's testimony to determine whether this Court has subject matter jurisdiction over Plaintiff's complaint. *See Savage*, 343 F.3d at 1039-40, n. 2; *McCarthy*, 850 F.2d at 560.

authority to support Plaintiff's tenuous assertion. Hammond's support to the Tribe via the newsletter, which may indirectly benefit the Tribe's performance of its self-determination contracts, cannot reasonably be construed as carrying out those contracts.[12]

Courts have found tribal employees to be employees of the government under Section 314 where their conduct could reasonably be construed as carrying out a tribal self-determination contract. For instance, in *Andrade*, a tribe had a self-determination contract with the federal government to administer a social services program. 2008 WL 4183011, at *5. The tribe created a "specific social services entity to carry out the [self-determination] contract." *Id.* at *7. When that entity experienced a staffing shortage, the tribe brought in employees from elsewhere to assist the social services entity in administering the social services program. *Id.* The court held that those employees became employees of the government under Section 314 because they were indisputably performing work that the social services entity was supposed to do under the tribe's self-determination contract. *Id.*

Similarly, in *Adams*, a tribal employee was found to be a federal employee for FTCA purposes. 2006 WL 2591271, at *4.[13] The plaintiff alleged that the defendant, a tribal employee, negligently caused a car accident between them. *Id.* at *1. At the time, the defendant was employed by a tribal school and was driving a car owned by the tribe for an employment-related purpose. *Id.* The tribal school was funded by a TCSA Grant, but the defendant was not paid by that grant. *Id.* at *3. The defendant

In *Allender*, an officer of the Ramah Navajo Chapter ("Ramah") tribal police arrested the

---

[12] Plaintiff argues that this Court must "liberally construe" the Tribe's self-determination contracts against the government. *See* Doc. 16 at 7-8. Defendant disputes Plaintiff's contention. *See* Doc. 21 at 3-4. Although the ISDEAA is liberally construed to benefit Indian tribes and self-determination contracts are generally liberally construed to benefit Indian contractors, *see Bristol Bay Area Health Corp. v. United States*, 110 Fed. Cl. 251, 259 (2013), it does not follow that the Tribe's self-determination contracts should be liberally construed in Plaintiff's favor. Regardless, as discussed below, Plaintiff's claim fails even if this Court liberally construes the Tribe's self-determination contracts in Plaintiff's favor.

[13] As noted, *Adams* concerned TCSA Grant contracts, not ISDEAA self-determination contracts. *See* 2006 WL 2591272, at *2-3. But the analysis of whether a tribal employee is a federal employee under a TCSA Grant pursuant to Public Law No. 101-512, Title II, § 314, is virtually identical to the analysis of whether a tribal employee is a federal employee under Section 314. *See* Public Law No. 101-512, Title II, § 314 ("With respect to claims resulting from the performance of functions . . . under a contract, grant agreement, or cooperative agreement authorized by the [TCSA] . . . an Indian tribe, tribal organization or Indian contractor is deemed hereafter to be part of the Bureau of Indian Affairs in the Department of the Interior . . . while carrying out any such contract or agreement and its employees are deemed employees of the Bureau or Service while acting within the scope of their employment"). *Adams* therefore is instructive here.

14

1  plaintiff for an alleged violation of state law. 379 F. Supp. 2d at 1209, 1220. The plaintiff sued the

2  defendants for various claims that allegedly arose out of his arrest and subsequent detention. *Id.* at 1210.

3  At the time of the plaintiff's arrest, Ramah had a self-determination contract that provided funds for,

4  among other things, a "Public Safety Department," which was tasked with "law enforcement . . .

5  services." *Id.* at 1217. The officer who arrested the plaintiff was employed under that self-determination

6  contract. *Id.* at 1215-16. Because Ramah's self-determination contract only contemplated that the Public

7  Safety Department would conduct "investigations of offenses and violations of . . . state law," the United

8  States argued that the officer was not authorized to enforce state law. *Id.* at 1217. The United States

9  therefore argued that the officer was not an employee of the government under Section 314. *Id.* at 1217.

10 The court disagreed, found that "enforcing state law was properly within the Public Safety Department

11 function," and therefore held that the officer was a federal employee under Section 314. *Id.* at 1217-18.

12       Conversely, in *Dinger v. United States*, the court found that a tribal employee was not a federal

13 employee under the ISDEAA. 2013 WL 1001444, at *4 (D. Kan. Mar. 13, 2013). In *Dinger*, the plaintiff

14 alleged that a tribal employee ("Wishkeno") negligently caused a car accident that killed the plaintiff's

15 husband. *Id.* at *1. The plaintiff brought suit against the United States on the ground that Wishkeno was

16 a federal employee pursuant to a tribal self-determination contract. *Id.* The plaintiff's complaint "did not

17 identify an ISDEAA contract that Wishkeno was allegedly employed under." *Id.* The United States

18 offered declarations "from two government officials," who testified that Wishkeno was not employed

19 under a tribal self-determination contract. *Id.* at *4. The court concluded that the plaintiff "failed to show

20 that Wishkeno was employed under a self-determination contract as defined in the ISDEAA" and

21 dismissed the complaint for lack of subject matter jurisdiction. *Id.*

22       Plaintiff provides no specific argument or explanation as to how the terms and provisions of the

23 Tribe's self-determination contracts contemplate Hammond's position and its correlative duties. Plaintiff

24 likewise provides no detailed explanation as to how Hammond was carrying out any of the Tribe's self-

25 determination contracts in her role as community liaison. Plaintiff simply asserts in a vague and general

26 fashion that Hammond serviced all of the contracts through her production of the newsletter, which

assisted the Tribe's performance of the self-determination contracts. If this Court were to accept Plaintiff's argument, a tribal employee who confers any benefit on another tribal employee carrying out a self-determination contract—no matter how indirect or tangential—could potentially be rendered a federal employee under Section 314. The Court is unaware of any authority that supports such an expansive reading of Section 314. The Court cannot accept Plaintiff's argument given that waivers of sovereign immunity must be unequivocally expressed. *See Testan*, 424 U.S. at 399.

In sum, Plaintiff fails to establish that the Tribe's self-determination contracts authorized Hammond's acts or omissions underlying Plaintiff's negligence claim. *Allender*, 379 F. Supp. 2d at 1211. Defendant, however, has demonstrated that the Tribe's self-determination contracts did not establish, fund, or contemplate Hammond's position as Tribal community liaison. Plaintiff has also failed to allege facts showing that Hammond was carrying out any of the Tribe's self-determination contracts. The Court therefore finds that Hammond is not an employee of the federal government under Section 314. Consequently, Defendant is not subject to liability under the FTCA for Hammond's alleged negligence. Accordingly, the Court must dismiss Plaintiff's complaint for lack of subject matter jurisdiction.[14]

## V. **CONCLUSION AND ORDER**

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss and DISMISSES WITHOUT LEAVE TO AMEND Plaintiff's complaint for lack of subject matter jurisdiction. Plaintiff's claim is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

Dated:   **November 14, 2014**          /s/ Lawrence J. O'Neill
                                         UNITED STATES DISTRICT JUDGE

---

[14] Because the Court dismisses Plaintiff's complaint, the Court DENIES Plaintiff's request for certification of Hammond as a federal employee under the FTCA. *See* Doc. 16 at 5-6.